**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **GARY WAYNE MULLINS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Nos. 2:17-04075** |
| | ) | |
| **SPENCER HILL, Acting Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Respondent's Motion for Summary Judgment (Document No. 21), filed on March 8, 2018. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment.

**PROCEDURAL HISTORY**

**A.      Criminal Action No. 11-F-755:**

In the September 2011 term of court, the Grand Jury of Kanawha County, West Virginia, returned an Indictment against Petitioner charging him with one count of kidnapping in violation of W. Va. Code § 61-2-14a (Count One); one count of second-degree robbery in violation of W. Va. Code 61-2-12(b) (Count Two); and one count of obtaining money through fraudulent pretenses in violation of W. Va. Code 61-3-24d (Count Three). State v. Mullins, Case No. 11-F-755 (Cir. Ct. Kanawha Co. November 29, 2012); (Document No. 20-1.) John Sullivan, Kanawha County Assistant Public Defender, was appointed to represent Petitioner. (Document No. 20-7 and 20-13.) Following a two-day jury trial beginning on February 6, 2012, Petitioner was convicted of

kidnapping (Count One) and acquitted of second-degree robbery (Count Two) and obtaining money through fraudulent pretenses (Count Three). (Document Nos. 20-2 and 20-3.) Following repeated requests by Petitioner for the appointment of new counsel, the Circuit Court relieved Mr. Sullivan as counsel and appointed Matthew A. Victor as counsel on June 6, 2012. (Document No. 20-7.) On July 5, 2012, Petitioner, by counsel, Matthew Victor, filed a Motion for New Trial and/or Judgment of Acquittal arguing that the trial court committed reversible error by following: (1) Denying Petitioner a motion for a change in venue; (2) Denying Petitioner's motion for an instruction defining second-degree robbery as a lesser included offense of kidnapping; (3) Admitting hearsay evidence of the alleged victim's prior consistent statements before the Petitioner's cross-examination credibility challenge; (4) Advising the jurors of the Petitioner's incarceration "due to matters unrelated to this case;" and (5) Excluding the Petitioner from the critical stage of the proceedings during the jury deliberations." (Document No. 20-4.) On August 2, 2012, the Circuit Court sentenced Petitioner to twenty-years in the state penitentiary.[1] (Document Nos. 20-7 and 20-8.) On August 3, 2012, Mr. Victor supplemented Petitioner's Motion for New Trial and/or Judgment of Acquittal to include an argument that the trial court erred by "failing to engage in a meaningful colloquy with the [Petitioner] concerning his right to testify in his own defense." (Document No. 20-5.) On October 29, 2012, Mr. Victor filed a Renewed Motion for New Trial realleging that the trial court committed reversible error by: (1) Denying an instruction defining second-degree robbery as a lesser included offense of kidnapping; (2) Admitting hearsay evidence of the alleged victim's prior consistent statements before the

---

[1] Although Petitioner was sentenced on August 2, 2012, the Circuit Court did not enter the Sentencing Order until November 29, 2012. (Document No. 20-8)

Petitioner's cross examination credibility challenge; (3) Advising the jurors of the Petitioner's incarceration due to the matters unrelated to this case; (4) Excluding the Petitioner from the critical stage of the proceedings during the jury deliberation; and (5) Failing to engage in a meaningful colloquy with the Petitioner concerning his right to testify in his own defense. (Document No. 20-6.) By Order entered November 29, 2012, the Circuit Court denied Petitioner's Motions for New Trial and/or Judgment of Acquittal. (Document No. 20-7.)

On March 25, 2013, Petitioner, by counsel, Mr. Victor, filed a Petition for Appeal with the Supreme Court of Appeals of West Virginia ["WVSCA"]. (Document No. 20-9.) In his appeal, Petitioner raised the following assignments of error:

1. Under plain error analysis, the trial court erred by admitting hearsay evidence of the alleged victim's prior consistent non-verbal statements and the interviewing law enforcement officer's belief in the victim's statements before the Petitioner's cross-examination credibility challenge.

2. Under plain error analysis, the trial court committed an error of constitutional dimensions by excluding the Petitioner from the critical stage of the proceedings, i.e., the communication between the trial court and the jury during jury deliberation.

3. There was insufficient evidence to convict the Petitioner of the charge of kidnapping.

4. Under plain error analysis, the Petitioner was denied due process of law when the State presented false and misleading evidence to the grand jury.

5. Under plain error analysis, the trial court committed reversible error by allowing prosecution's repeated description of the Petitioner as "a con man" or "a con man who preys on the elderly" to be presented to the jury.

6. The cumulative error in the trial court proceedings deprived the Petitioner of his due process rights to a fair trial.

(Id.) The State filed its Response Brief on June 7, 2013. (Document No. 20-10.) By Memorandum Decision filed on October 18, 2013, the WVSCA affirmed Petitioner's conviction. (Document No.

4

20-11.)

**B.    State *Habeas* Petition:**

On November 19, 2013, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* and Memorandum in Support in the Circuit Court of Kanawha County. Mullins v. Rubenstein, Case No. 13-P-625 (Cir. Ct. Kanawha Co.); (Document No. 20-12.) In his Petition, Petitioner raised the following grounds for *habeas* relief:

1.    Denial of effective assistance of counsel based upon counsel's failure to make objections to testimony or questions asked by prosecution.

2.    Denial of effective assistance of counsel based upon counsel's failure to object or raise awareness to the fact that an instruct defining second degree robbery as a lesser included offense of kidnapping.

3.    Denial of effective assistance of counsel based upon counsel allowed the admission of hearsay evidence of the alleged victim's prior consistent statements before the Petitioner's cross examination credibility challenge.

4.    Denial of effective assistance of counsel based upon counsel's failure to object or make awareness to the fact that Petitioner was being excluded during a vital stage of the proceedings during jury deliberation.

5.    Denial of effective assistance of counsel based upon counsel's failure to object to the presentation of false and misleading evidence to the grand jury.

6.    Denial of effective assistance of counsel based upon counsel's act of allowing, without objection, prejudicial statements by the prosecution concerning the alleged pattern of the Petitioner's prior conduct.

7.    Denial of effective assistance of counsel based upon counsel's failure to present witnesses with valuable testimony as to his defense.

(Id.) The Circuit Court appointed counsel to represent Petitioner in his *habeas* proceedings. (Id.) On September 25, 2014, Petitioner, by counsel, Mr. Victor, filed an Amended Petition asserting the following grounds:

1.    Petitioner received ineffective assistance of counsel in the underlying

criminal case.

2.     The trial court erred by admitting hearsay evidence of the alleged victim's prior consistent non-verbal statements and the interviewing law enforcement officer's belief in the victim's statements before the Petitioners' cross-examination credibility challenge.

3.     The trial court committed an error of constitutional dimensions by excluding the Petitioner from the critical stage of the proceedings, i.e., the communication between the trial court and the jury during jury deliberation.

4.     There was insufficient evidence to convict the Petitioner of the charge of kidnapping.

5.     The Petitioner was denied due process of law when the State presented false and misleading evidence to the grand jury.

6.     The trial court committed reversible error by allowing prosecutions' repeated description of the Petitioner as "a con man" or "a con man who preys on the elderly" to be presented to the jury.

7.     The cumulative error in the trial court proceedings deprived the Petitioner of his due process rights to a fair trial.

(Document No. 20-13.) The Circuit Court conducted an omnibus hearing on March 4, 2015.

(Document No. 20-23.) The Circuit Court heard testimony from the following: (1) Courtney Hill,

a bank employee; (2) Tamera Westfall, Petitioner's sister; (3) John Sullivan, Petitioner's trial

counsel; and (4) Petitioner. (Id.) By Order entered on December 16, 2015, the Circuit Court denied

Petitioner's Amended *Habeas* Petition. (Document No. 20-14.)

Petitioner, by counsel, Mr. Victor, filed his appeal concerning the Circuit Court's decision

denying his *habeas* Petition. (Document No. 20-15.) On March 8, 2016, Petitioner filed his brief

raising the following grounds:

1.     Petitioner received ineffective assistance of counsel in the underlying criminal case.

2.     The trial court erred in admitting hearsay evidence of the alleged victim's

5

prior consistent non-verbal statements and the interviewing law enforcement officer's belief in the victim's statements before the Petitioner's cross-examination credibility challenge.

3.  The trial court committed an error of constitutional dimensions by excluding the Petitioner from the critical stage of the proceedings, i.e., the communication between the trial court and the jury during jury deliberation.

4.  There was insufficient evidence at trial to convict the Petitioner of the charge of kidnapping.

5.  The Petitioner was denied due process of law when the State of West Virginia presented false and misleading evidence to the grand jury.

6.  The trial court committed reversible error by allowing prosecution's repeated description of the Petitioner as "a con man" or "a con man who prays on the elderly" to be presented to the jury.

7.  The cumulative error in the trial court proceedings deprived the Petitioner of his due process rights to a fair trial.

(Id.) On April 15, 2016, the State filed "Respondent's Brief." (Document No. 20-16) On December 15, 2014, Petitioner filed his Reply Brief. (Id., pp. 81 - 86.) On September 8, 2016, Petitioner, by counsel, Mr. Victor, filed his "Amended Petition for Appeal from Denial of Petition for a Writ of Habeas Corpus." (Document No. 20-17.) By "Memorandum Decision" filed on March 10, 2017, the WVSCA affirmed the decision of the Circuit Court. (Document No. 20-18.)

**C.    Section 2254 Petition:**

On September 29, 2017, Petitioner, acting *pro se*, filed a Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody.[2] (Document No. 1.) In his Petition, Petitioner alleges ineffective assistance of counsel as his sole ground for *habeas* relief. (Id.)

---

[2]  Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

Specifically, Petitioner alleges that trial counsel "never objected to hardly anything, prosecutor lead witness with no objection, [and] my lawyer did no investigation." (Id., p. 6.) On October 17, 2017, Petitioner filed as an Exhibit a copy of his "Assignment of Errors" as filed in his Notice of Appeal with the WVSCA. (Document No. 7.)

By Order entered on November 6, 2017, the undersigned directed Respondent to file a Response to Petitioner's Petition. (Document No. 12.) On March 8, 2018, Respondent filed his Answer, Motion for Summary Judgment, and Memorandum in Support. (Document Nos. 20 - 22.) As Exhibits, Respondent attaches the following: (1) A copy of Petitioner's Indictment as filed in State v. Mullins, Case No. 11-F-755 (Cir. Ct. Kanawha Co. Nov. 29, 2012) (Document No. 20-1.); (2) A copy of Petitioner's "Jury Verdict Form" as filed in Case No. 11-F-755 (Document No. 20-2.); (3) A copy of the Conviction Order as filed in Case No. 11-F-755 (Document No. 20-3.); (4) A copy of Petitioner's "Motion for New Trial and/or Judgment of Acquittal" as filed in Case No. 11-F-755 on July 5, 2012 (Document No. 20-4.); (5) A copy of Petitioner's "Additional Motion for New Trial and/or Judgment of Acquittal" as filed in Case No. 11-F-755 on August 3, 2012 (Document No. 20-5.); (6) A copy of Petitioner's "Renewed Motion for New Trial and/or Judgment of Acquittal" as filed in Case No. 11-F-755 on October 29, 2012 (Document No. 20-6.); (7) A copy of the Circuit Court's "Order Denying Defendant's Motion for New Trial and/or Judgment of Acquittal" as entered on November 29, 2012, in Case No. 11-F-755 (Document No. 20-7.); (8) A copy of the Circuit Court's Sentencing Order as entered on November 29, 2012, in Case No. 11-F-755 (Document No. 20-8.); (9) A copy of Petitioner's "Petition for Appeal" as filed with the WVSCA on March 25, 2013 (Document No. 20-9); (10) A copy of the State's Response Brief as filed with the WVSCA on June 7, 2013 (Document No. 20-10.); (11) A copy of the

7

WVSCA "Memorandum Decision" as filed on October 18, 2013 (Document No. 20-11.); (12) A copy of Petitioner's *pro se* habeas Petition as filed with the Circuit Court of Kanawha County (Case No. 13-P-625) (Document No. 20-12.); (13) A copy of Petitioner's Amended State habeas Petition as filed by counsel in the Circuit Court of Kanawha County (Document No. 20-13.); (14) A copy of the Circuit Court's "Order Denying Petitioner's Amended Petition for Writ of Habeas Corpus" as entered on December 16, 2015 (Document No. 20-14.); (15) A copy of Petitioner's "Petition for Appeal From Denial of Petition for a Writ of Habeas Corpus" as filed with the WVSCA on March 8, 2016 (Document No. 20-15.); (16) A copy of the State's Response Brief as filed with the WVSCA on April 15, 2016 (Document No. 20-16.); (17) A copy of Petitioner's "Amended Petition for Appeal from Denial of Petition for a Writ of Habeas Corpus" as filed with the WVSCA on September 8, 2016 (Document No. 20-17.); (18) A copy of the WVSCA "Memorandum Decision" as filed on March 10, 2017 (Document No. 20-18.); (19) A copy of the WVSCA's Mandate (Document No. 20-19.); (20) A copy of Petitioner's trial transcripts (Document Nos. 20-20 and 20-21.); (21) A copy of the transcripts from Petitioner's sentencing hearing conducted on August 2, 2012 (Document No. 20-22.); and (22) A copy of the transcripts from Petitioner's omnibus hearing conducted on March 4, 2015 (Document No. 20-23.).

On March 12, 2018, Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued to Petitioner advising him of his right to file a response to Respondent's request for dismissal. (Document No. 23.) On March 30, 2018, Petitioner filed his letter-form Motion for Appointment of Counsel. (Document No. 26.) By Order entered on April 2, 2018, the undersigned granted Petitioner's letter-form Motion and appointed Assistant Federal Public Defender Rachel Elizabeth Zimarowski as counsel for Petitioner. (Document Nos. 27 and 28.) On August 16, 2018,

8

after the granting two extensions of time, Petitioner, by counsel, filed his Response in Opposition to Respondent's Motion for Summary Judgment. (Document No. 33.)

## **FACTUAL BACKGROUND**

On January 11, 2011, Petitioner allegedly jumped into the alleged victim's (George Jacobs)[3] vehicle and demanded money while the victim was parked in Kroger's parking lot. The victim testified that he was 84 years old when the incident occurred. (Document No. 20-20, p. 159.) After parking in a space in the Kroger's parking lot, the victim explained that he exited his car "to see something." (Id., p. 161.) The victim testified that when he re-entered his car, the Petitioner was sitting in the passenger seat. (Id.) The victim stated that he did not know the Petitioner and "I had never seen him before in my life." (Id.) The victim testified that Petitioner stated that he had "to have $2,000.00," and the victim responded that "All I got is enough to get my own groceries because I left my money home." (Id.) The victim explained that Petitioner inquired if he lived in Kanawha City. (Id., p. 162.) When the victim responded "yeah," the Petitioner stated "Well, start driving and we'll go over to your house." (Id.) The victim explained that he drove Petitioner to his house because he felt "scared" and the Petitioner was "getting mean" and "arrogant." (Id.) The victim testified that Petitioner "grabbed me by the arm and said, 'Let's get started.'" (Id.) The victim further stated that he felt threatened because the Petitioner stated that "You know, I know you . . . You used to own The Strand, didn't you?." (Id., p. 163.) Upon arriving at the victim's house, the victim gave Petitioner $1,800.00 in cash but the Petitioner continued to demand $2,000.00. (Id., p. 164.) The victim testified that he offered to write a check

---

[3] The record reveals that the alleged victim, George Jacobs, passed away on February 7, 2012, the day after his testimony. (Document No. 20-1, p. 73.)

to Petitioner for $200 and cash it at a bank. (Id., p. 165.) The victim explained that he and Petitioner drove to United Bank where the victim used the drive-through window to cash a check for $200. (Id.) On the return drive back to the Kroger's parking lot, the Petitioner instructed the victim to not tell his son (Pat Jacobs) or the police of "what we're doing." (Id., p. 166.) Upon returning to the Kroger's parking lot, the Petitioner exited the victim's vehicle, got in his "black pickup truck" and drove away. (Id., p. 167.) The victim acknowledged that he did not report the above incident to the police on January 11, 2011. (Id., p. 169.) The victim testified that he didn't feel like he should call the police because he was embarrassed that he was "was that weak" and "let a guy like that run over me like that." (Id., p. 170.)

On January 13, 2011, the Petitioner returned to victim's house, "banged on the door," and stated that "he needed some money." (Document No. 171.) The victim testified that he informed Petitioner that he didn't have any more money, but the Petitioner responded that "I'll call you back . . . because I've got to have some more money." (Id., pp. 171-72.) The victim explained that he then made a $2,000.00 cash advance on his Visa so that he could provide money to the Petitioner. (Id., pp. 172-73.) The victim again acknowledged that he did not tell anyone of the above incident. (Id., pp. 174-75.)

Following the January 13, 2011 incident, the victim explained that Petitioner "just started constantly calling me or driving up in his car - - truck and seeing, you know, if I wanted to go and do anything." (Id., p. 175.) The victim, however, testified that he did not consider the Petitioner a "friend" even though "he tried to act like it." (Id.) On February 22, 2011, the victim explained that Petitioner again needed money and he cashed a check at United Bank for $450.00. (Id., p. 177.) The victim further explained that Petitioner accompanied him to United Bank where Petitioner

10

signed a promissory note for $4,600.00. (Id., pp. 176-77, 205-06.) The victim explained that $4,600.00 was the total amount he had given Petitioner at that time and a bank employee (Courtney L. Hill) assisted with the promissory note. (Id., pp. 176-77.) Although the victim testified that he felt "threatened" by the Petitioner, the victim stated that he had the Petitioner sign a promissory note because "I've got to have something to show for it." (Id., p. 177.)

Following the signing of the foregoing promissory note, the victim stated that he "signed another note" and loaned Petitioner more money for the purchase of a red Ford Ranger and tires from Sears. (Id., p. 178.) The victim testified that he felt that he was forced to pay for these items. (Id., p. 179.) The victim explained that Petitioner continued to ask for money and that, in total, the victim gave him approximately $8,000.00. (Id., p. 182.) The victim, however, identified a document in Petitioner's handwriting showing where the Petitioner indicated that he owed the victim $5,771.00 and at the bottom of the document the victim's handwriting adding additional amounts. (Id., p. 189-90.) The victim explained that Petitioner was planning to repay him from the proceeds of a house that was going to be sold in the near future. (Id., pp. 196, 215.) The victim, however, stated that Petitioner never repaid any of the money. (Id.) Again, the victim acknowledged that he never contacted the police or informed family members of the foregoing. (Id., pp. 182-83.) The victim further acknowledged that even though he was aware that Petitioner was in jail on unrelated charges, the victim did not report any of the foregoing until his was contacted by the police in August 2011. (Id., pp. 209-12.) The victim further acknowledged that he cashed checks for Petitioner's girlfriend (Amy Myers) during the time Petitioner was in jail even though he was not in fear of the Petitioner. (Id.)

Martin F. McMicken, a patrol officer with the Charleston Police Department, testified that

11

he met with the victim on August 23, 2011. (Id., pp. 219-20.) Officer McMicken stated that he met with the victim regarding a larceny report involving someone stealing money from the victim. (Id., p. 220.) Officer McMicken testified that the meeting lasted for approximately 30 to 40 minutes and the victim was emotional during the meeting. (Id.) Officer McMicken explained that after meeting with the victim, Officer McMicken met with Detective Noland and a second meeting was set up with the victim. (Id., pp. 221-22.)

Jamie Noland, a detective with the Charleston Police Department, testified that he initially met with the victim, Pat Jacobs (victim's father), and Rhonda Jacobs (Pat Jacobs' wife) on August 26, 2011, in regards to a possible kidnapping and robbery of the victim. (Id., pp. 141-42.) Detective Noland acknowledged that the victim and his family had already met and gave a statement to Officer McMicken. (Id., p. 143.) Detective Noland testified that the victim's statement to him was consistent with the statement the victim had given to Officer McMicken. (Id., p. 149.) Detective Noland, however, acknowledged that the victim's son and daughter-in-law were present during both interviews. (Id., p. 155.) Detective Noland explained that after above meeting, Detective Noland consulted with the prosecutor's office and charges were filed against the Petitioner. (Id., p. 149.) On cross examination, Detective Noland acknowledged that he was unable to obtain video footage from the Kroger's parking lot or United Bank for January 11, 2011. (Id., pp. 149-50) Detective Noland explained that too much time had passed since the date of the incident and the date the video footage was requested. (Id.) Detective Noland further acknowledged that he did not obtain a statement from Courtney Hill or from any employee of Sears Auto Center or Abbott's Towing. (Id., p. 151.) Finally, Detective Noland acknowledged that he did not obtain phone records from the victim or Petitioner. (Id., p. 154.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To trigger the above AEDPA deference, a State Court's decisions must be "adjudicated on the merits." Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015)(If the State court's decision does not qualify as an "adjudication on the merits," AEDPA deference is not triggered and the Court must review the issue *de novo*.). A claim is "adjudicated on the merits" if the claim "is exhausted in state court and not procedurally defaulted." Gray v. Zook, 806 F.3d 783, 798 (4th Cir. 2015)(citation omitted); also see Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)(explaining that a claim has been adjudicated upon the merits where the claim was "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree"); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogation on other grounds recognized*, United States v. Barnett, 644 F.3d 192 (4th Cir. 2011)(Exhaustion requires that a claim be "fairly presented," such that the claim was presented face-up and squarely, providing an opportunity for review by the highest state court.) It is a case-specific inquiry as to whether a claim has been

13

"adjudicated on the merits," but a "claim is not 'adjudicated on the merits' when the state court makes its decision 'on a materially incomplete record.'" Braxton, 780 F.3d at 202 (citing Winston v. Kelly (Winston I), 592 F.3d 535, 544 (4th Cir. 2010)(The record may be materially incomplete if a state court "unreasonably refuses to permit further development of the facts.") The Fourth Circuit has explained that where a state court "unreasonably refuses to permit further develop of the facts," it passes up the opportunity that exhaustion ensures. Winston v. Pearson (Winston II), 683 F.3d 489, 496 (4th Cir. 2012)(exhaustion requires that a state court have an opportunity to apply the law and consider all relevant evidence to petitioner's claim). Additionally, the "adjudication on the merits" requirement does not exclude "claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999); also see Winton II, 683 F.3d at 502(discussing Harrington v. Richter, 562 U.S 86, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011)(noting that although a state court's summary denial may be presumed an "adjudication on the merits," a federal court may still find that the state court did not adjudicate a claim on the merits if the thoroughness of the state court's development of the record is challenged and there was a materially incomplete record before the state court.) When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.), cert. denied, 524 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001). The Court, however, must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158; also see Harrington, 562 U.S at 98 – 99, 131 S.Ct. at 770("Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still

14

must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for § 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.").

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."); also see Woods v. Donald, 575 U.S. ___, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(*per curiam*)(For a state court's decision to be an unreasonable application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") Thus, a litigant must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 562 U.S at 103, 131 S.Ct. at 770. When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we

are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[4] On this framework, consideration should be given to the Motion for Summary Judgment.

**Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 -

---

[4] Title 28, U.S.C. Section 2254(e) provides:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
    (A) the claim relies on –
        (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
        (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

## ANALYSIS

Petitioner basis all of his grounds for *habeas* relief upon a claim of ineffective assistance of counsel. The standards established by the United States Supreme Court in determining whether or not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in

17

Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

Where the State court applies the Strickland standard in the adjudication of a petitioner's ineffective assistance of counsel claim, the standard of review in a Section 2254 proceeding differs from the standard used in the direct review of a Strickland challenge. The United States Supreme Court has explained as following:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This differs from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Williams*, supra, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

Harrington, supra, 562 U.S. at 101, 131 S.Ct. at 785. The Supreme Court acknowledged that "[s]urmounting *Strickland's* high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." Id., 562 U.S. at 105, 131 S.Ct. 788("The standards created by *Strickland* and § 2254(d) are both 'highly deferential," and when the two apply in tandem, review is 'doubly' so."); also see Woods, supra, 575 U.S. ___, 135 S.Ct. at 1376(For claims of ineffective assistance of counsel, "AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt.")(internal quotations omitted). The Supreme Court warned that "[f]ederal

habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." Harrington, supra, 562 U.S. at 105, 131 S.Ct. 788. Under Section 2254(d), "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurist could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." Id., 562 U.S. at 101, 131 S.Ct. at 785. To obtain *habeas* relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., 562 U.S. at 103, 131 S.Ct. at 787. Applying these standards, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

A.    **Failure to call witness:**

In his Petition, Petitioner argues that trial counsel "never objected to hardly anything, prosecutor led witness with no objection." (Document No. 1, p. 6.) In his Motion for Summary Judgment, Respondent first argues that Petitioner's Petition is insufficiently pled. (Document No. 22, p. 22.) Next, Respondent argues that even if the Court gives Petitioner latitude based upon his *pro se* status, the record reveals that Petitioner did not receive ineffective assistance of counsel. (Id., pp. 13 – 14.) Respondent contends that trial counsel's decision to not call Petitioner's sister as a witness falls within the realm of trial strategy. (Id., p. 13.) Respondent further contends that the State *habeas* court correctly determined that Petitioner's sister was not present during the January 11, 2011 incident and would have been unable to render admissible testimony regarding

the alleged kidnapping. (Id.) Thus, Respondent contends that Petitioner cannot establish that he was prejudiced by trial counsel's failure to call Petitioner's sister as a witness. (Id., p. 14.)

In Response, counsel first argues that Petitioner's *pro se* Petition is sufficient to set forth his *habeas* claim of ineffective assistance of counsel. (Document No. 33, pp. 4 – 5.) Counsel notes that Petitioner's *pro se* Petition is "clear enough for the State to respond substantively, undermining its procedural argument." (Id., p. 4.) Next, Petitioner argues that trial counsel was ineffective for failing to call his sister as a witness because she could have "undermined" the victim's testimony. (Id., p. 7.) Petitioner contends that the victim was the only witness who testified about the events occurring on January 11, 2011. (Id.) Petitioner stresses that the victim testified that he had never met Petitioner prior to the January 11th incident. (Id.) Petitioner contends that the foregoing was crucial to his defense because "[a] stranger getting into a person's car unannounced and demanding money strongly lends itself to a conclusion of menace, threat, and fear of harm or injury." (Id.) Petitioner contends that "a person known to the alleged victim doing the same thing does not raise the same inference." (Id.) Petitioner argues that during his omnibus hearing, his sister (Tamera Westfall) testified that she talked to the victim after Petitioner's arrest and the victim stated that "Gary was a very good friend of his." (Id., p. 8.) Petitioner notes that his sister further testified that the victim told her that on January 11, 2011, "he had met [Petitioner] in the parking lot of the grocery store and he said [Petitioner] remembered him where he had owned several restaurants in town. And he said they got to talking and everything." (Id.) Finally, Petitioner states that his sister testified that the victim told her that "he owned the restaurants and he knew [Petitioner] and remembered" him." (Id.) Petitioner, therefore, argues that his sister's testimony "would have fatally undermined [the victim's] testimony, of which the jury was already dubious."

20

(Id.) Petitioner, therefore, argues that in denying Petitioner's above *habeas* claim the WVSCA

unreasonably applied the Strickland standard and made unreasonable determinations of the facts.

(Id., pp. 9 – 10.)

After identifying the Strickland standard and the equivalent West Virginia authority as the

applicable precedent, the WVSCA found as follows:

> [P]etitioner argues that defense counsel was ineffective in his failure to
> investigate and call witnesses to establish the alleged "relationship" between
> petitioner and the victim, which petitioner characterizes as a "friendship." . . .
> Similarly, petitioner argues that defense counsel should have called petitioner's
> sister as a witness. At the habeas hearing, petitioner's sister testified that when she
> called the victim to ask him to post petitioner's bond following his arrest, the victim
> told her that he and petitioner were good friends and that he agreed to post
> petitioner's bond. She further testified that the victim was not afraid of petitioner
> and that he was upset that petitioner was in jail. It is petitioner's argument that,
> given the testimony of these witnesses at the habeas hearing, this evidence would
> have cast a reasonable doubt as to the veracity of the victim's trial testimony and
> the allegation of kidnapping.
>
> We find that defense counsel's decision not to call these witnesses was a
> matter of trial strategy of which this Court will defer. "What defense to carry to the
> jury, what witnesses to call, and what method of presentation to use is the epitome
> of a strategic decision, and it is one that we will seldom, if ever, second guess."
> *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. Indeed, it is difficult to imagine how
> the testimony of these witnesses would have been relevant to whether petitioner
> kidnapped the victim as neither was present in the Kroger's parking lot when
> petitioner entered the victim's vehicle, demanded money, and forced the victim to
> drive to his home. The victim's testimony at trial established the elements of the
> crime. Petitioner, the only other person present in the vehicle, elected not to testify.
> Given these circumstances, we find that defense counsel's decision not to call the
> bank employee and petitioner's sister as trial witnesses was not "deficient under an
> objective standard of reasonableness." *Id.* at 6, 459 S.E.2d at 117, at syl. Pt. 5, in
> part.

(Document No. 20-18, pp. 5 – 6.)

During the omnibus hearing, Tamera Westfall (Petitioner's sister) testified that she first

talked to the victim following Petitioner's arrest in April 2011. (Document No. 20-23, p. 17.) Ms.

Westfall explained that she called the victim at Petitioner's request regarding the posting of

Petitioner's bond. (Id.) Ms. Westfall testified that the victim indicated that he would help post Petitioner's bond. (Id.) Ms. Westfall further explained that she talked to the victim "many times over a five or six month span." (Id.) Ms. Westfall testified that victim referred to Petitioner as "a very good friend" and stated that they sometimes went out to lunch together. (Id.) Ms. Westfall stated that she informed Petitioner that she was willing to testify regarding Petitioner's "relationship" with the victim. (Id., p. 18.) Ms. Westfall acknowledged that she never notified defense counsel prior to the trial date of her desire to testify. (Id.) Ms. Westfall, however, stated that she informed the prosecutor and trial counsel of her desire to testify at the being of Petitioner's trial. (Id., p. 19.) Ms. Westfall explained that she informed trial counsel that she "knew the [victim]," "all about the situation," and "had talked to [the victim] for a long time." (Id., p. 20.) Ms. Westfall testified that the victim never indicated any fear of Petitioner. (Id., p. 17.) Finally, Ms. Westfall acknowledged that she had no personal knowledge of what occurred on January 11, 2011, other than what she had been told by Petitioner and the victim. (Id., p. 25.) Ms. Westfall testified that the victim told her "that he had met [Petitioner] in the parking lot of the grocery store and he said [Petitioner] remembered him where he had owned several restaurants in town. And he said they got to talking and everything. He told me that he loaned [Petitioner] some money." (Id., p. 26.) Ms. Westfall stated that the victim never said anything about being kidnapped by Petitioner. (Id.) Ms. Westfall then gave inconsistent testimony regarding whether Petitioner knew the victim prior to the January 11th incident. (Id., pp. 27 – 28.) Initially, Ms. Westfall testified that she did not know if Petitioner knew the victim prior to January 11, 2011. (Id.) She then testified that Petitioner used to "frequent and patronize [the victim's] restaurants" and the victim confirmed that "he owned the restaurants and he knew [Petitioner] and remembered [Petitioner]." (Id., p. 29.)

22

During the omnibus hearing, trial counsel testified that Petitioner informed him that he had "at least an acquaintanceship" with the victim prior to January 11, 2011, because he used to frequent restaurants owned by the victim. (Id., p. 36.) Trial counsel, however, acknowledged that he failed to investigate any prior relationship between Petitioner and the victim. (Id., p. 33.) Trial counsel explained he felt the only way to prove a prior relationship between the Petitioner and the victim was the Petitioner's "own testimony, which was always an option if we decided that he would testify at trial." (Id.) Trial counsel stated that he advised Petitioner of his right to testify, but Petitioner chose not to do so. (Id., p. 52.) Trial counsel testified that he had talked to Petitioner's sister regarding the alleged "relationship." (Id., pp. 56 – 57.) Trial counsel testified, however, that Petitioner's sister's testimony concerning the alleged "prior relationship" would have been helpful "if I had a way to get that in front of the jury that would not harm his case in some other way." (Id., p. 37.) Trial counsel explained that he "chose to not call the witness after the cross examination [because he] didn't feel that there was enough additional evidence - - relevant evidence that she could have put on to justify having the witness and the - - a risk of cross examination." (Id., p. 65.) Trial counsel stated that he felt that his cross-examination of the victim was adequate to establish any relationship between the victim and Petitioner. (Id., pp. 62 and 64.) Trial counsel further explained that in his experience juries usually don't believe a defendant's family members. (Id., p. 64.) Finally, trial counsel described his trial stagey as follows:

> The theory of the case was that [the victim] gave money to [Petitioner]. And later [Petitioner] acknowledged debt to [the victim] in a written document that [Petitioner] gave to [the victim], which included [Petitioner's] identity and was written out in a public forum. And that they continued their relationship for a number of months thereafter, which is entirely inconsistent with a kidnapping.

(Id., p. 58.)

23

"[T]he decision whether to call a defense witness is a strategic decision demanding the assessment and balancing of perceived benefits against perceived risks, and on to which we must afford enormous deference." United States v. Terry, 366 F.3d 312, 317-18 (4th Cir. 2004)(counsel's decision not to call certain witnesses was reasonable based upon his professional judgment); also see Strickland, 466 U.S. at 690, 104 S.Ct. at 2065("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); United States v. Champman, 593 F.3d 365, 369 (4th Cir. 2010)(even if defendant disagrees, "which witnesses to call is a classic tactical decision left to counsel"); United States v. Best, 219 F.3d 192, 201 (2nd Cir. 2000)(the failure to call witnesses, even those who might offer mitigating evidence, is not ordinarily viewed as a lapse in professional judgment); Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977)(the failure to call witnesses is a tactical decision that generally does not amount to ineffective assistance of counsel). It is well recognized that tactical decisions, such as which witness to call, are "virtually unchallengeable." Powell v. Kelly, 562 F.3d 656, 670 (4th Cir. 2009)(quotation marks omitted); United States v. Orr, 636 F.3d 944, 955 (8th Cir. 2011)("[W]e consistently have affirmed that a defense counsel's decision not to call a witness is a virtually unchallengable decision of trial strategy."); Hall v. Thomas, 611 F.3d 1259, 1293 (11th Cir. 2010)("[T]he decision concerning which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); Boyle v. McKune, 544 F.3d 1132, 1139 (10th Cir. 2008)("[T]he decision of which witnesses to call is quintessentially a matter of strategy for the trial attorney."). Furthermore, matters such as counsel's approach to impeach are viewed as tactical decisions. Reynoso v. Giurbino, 462 F.3d 1099, 1113 (9th Cir. 2006).

The undersigned finds that there is no evidence that the State court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the WVSCA correctly referenced the <u>Strickland</u> standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, argues that the WVSCA unreasonably applied <u>Strickland</u> to the facts of his case. As stated above, the WVSCA determined that trial counsel's decision not to call Petitioner's sister as a witness was a matter of trial strategy, and such a decision was not "deficient under an objective standard of reasonableness." Considering what arguments or theories supported, or could have supported the WVSCA's decision, the undersigned finds that the State court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." A review of the record reveals that during the omnibus hearing, trial counsel explained that he did not call Petitioner's sister as a witness because juries usually discredit the testimony of family members. Trial counsel further stated that he felt he sufficiently challenged the creditably of the victim concerning his "relationship" with Petitioner through his cross-examination of the victim. The record clearly reveals that trial counsel thoroughly cross-examined the victim regarding his "relationship" with the Petitioner. Specifically, trial counsel elicited testimony from the victim that Petitioner told the victim his name on the day of the alleged kidnapping (January 11, 2011). (Document No. 20-20, p. 206) Trial counsel elicited testimony from the victim that following the incident on January 11, 2011, Petitioner and the victim would go places together, eat at McDonalds and Burger King together, and visited the Petitioner's parent's house. (<u>Id.</u>, p. 197, 199, 207-08.) Trial counsel further elicited testimony from the victim that Petitioner signed a promissory note

25

regarding the repayment of the $2,000 that was allegedly taken during the kidnapping on January 11, 2011. (Id., pp. 189-91, 204-06.) During closing arguments, trial counsel emphasized that the foregoing was not consist with actions taken by a kidnapper or robber. (Document No. 20-21, pp. 51 – 52.) Trial counsel further emphasized the victim's testimony that upon arriving at the victim's house on January 11, 2011, the Petitioner stepped away to urinate in the yard while the victim was allowed to enter the house. (Id., p. 53.) Trial counsel stressed that the foregoing indicated that the victim was not being forced or threatened. (Id.) Trial counsel thoroughly questioned the victim regarding his contact with the Petitioner's sister and girlfriend that occurred after Petitioner's arrest. (Document No. 20-20, pp. 182 - 212.) Trial counsel elicited testimony that following Petitioner's arrest, the victim cashed checks for Petitioner's girlfriend. (Id., pp. 182-93, 209-12.) Trial counsel further elicited testimony that the victim indicated to Petitioner's sister that the victim was open to loaning her money to bond Petitioner out of jail, but the bond amount was too high. (Id., p. 193.) During closing arguments, trial counsel stressed that the foregoing was inconsistent with the victim's statement that he was afraid of the Petitioner and that he was happy that Petitioner was in jail. (Document No. 20-21, pp. 57 – 58.) Trial counsel thoroughly cross-examined the victim regarding his testimony that he did not report the kidnapping because he was afraid of the Petitioner. Trial counsel elicited the victim's admission that, despite his lack of fear following Petitioner's arrest in April 2011, the victim failed to report the alleged kidnapping. (Document No. 20-20, pp. 209-12.) During closing arguments, trial counsel stressed that the victim did not report the alleged kidnapping and robbery until he was contacted by police in August 2011. (Document No. 20-21, pp. 55, 61 – 62.) Finally, the undersigned finds that it is certainly reasonable that the creditability of Petitioner's sister would have been questionable due to her relation to Petitioner.

Based upon a review of the entire record, the undersigned finds that the trial counsel's decision to not call Petitioner's sister as a witness was a matter of trial strategy, and that the decision was objectively reasonable under the totality of the circumstances.

Furthermore, Petitioner has not shown that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. Petitioner contends that his sister's testimony would have challenged the veracity and credibility of the victim's testimony regarding the Petitioner and victim's relationship on January 11, 2011. Specifically, Petitioner emphasizes that during the omnibus hearing, his sister testified that the victim told her that Petitioner used to "frequent and patronize [the victim's] restaurants" and "he knew [Petitioner] and remembered [Petitioner]." Although the foregoing might have challenged the veracity of the victim's testimony that he did not know Petitioner on the day of the alleged kidnapping (January 11, 2011), such did not challenge the veracity of the victim's testimony that on January 11, 2011, Petitioner "grabbed" his arm and he was afraid and felt threatened by the Petitioner. Mere testimony that the victim remembered Petitioner because Petitioner used to frequent his restaurants does not refute that the victim was kidnapped by Petitioner or felt threatened by Petitioner. It is undisputed that Petitioner's sister was not present, nor did she witness, the alleged kidnapping that occurred on January 11, 2011. There is no evidence that Petitioner's sister's testimony could have reasonably placed any doubt in the jury's mind as to Petitioner's guilt of kidnapping. Thus, the undersigned finds that Petitioner has failed to demonstrate that he suffered any prejudice. Based upon the foregoing, the undersigned cannot find that the State court's application of <u>Strickland</u> was unreasonable under § 2254(d).

Therefore, the undersigned finds that the State court's determination on the above claim

27

was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's above claim of ineffective assistance of counsel.

**B.    Failure to investigate:**

In his Petition, Petitioner complains that trial counsel "did no investigation." (Document No. 1, p. 6.) In his Motion for Summary Judgment, Respondent first argues that Petitioner's Petition is insufficiently pled. (Document No. 22, p. 22.) Next, Respondent argues that even if the Court gives Petitioner latitude based upon his *pro se* status, the record reveals that Petitioner did not receive ineffective assistance of counsel. (Id., pp. 13 – 14.) Respondent contends that trial counsel did not act ineffectively in his investigation. (Id.) Respondent explains that "the WVSCA observed that testimony at trial revealed that video footage from Kroger was no longer available by the time the victim reported the crime to police." (Id., p. 13.) Trial counsel explained that he "believed that there were no further reliable witnesses to corroborate Petitioner's defense that he was merely engaging in a financial transaction with the victim." (Id.) Respondent stresses that "trial counsel's defense resulted in an acquittal of two of the counts charged." (Id.) Concerning the bank teller as a potential witness, Respondent contends that the WVSCA properly determined that she "could only give speculative information at best." (Id.) Respondent concludes that Petitioner cannot establish that he was prejudiced by the foregoing "[b]ecause Petitioner cannot show that counsel's decision not to call witnesses unconstitutionally prejudiced him and resulted in his conviction for kidnapping." (Id., p. 14.)

In Response, counsel first argues that Petitioner's *pro se* Petition is sufficient to set forth

28

his *habeas* claim of ineffective assistance of counsel. (Document No. 33, pp. 4 – 5.) Counsel notes that Petitioner's *pro se* Petition is "clear enough for the State to respond substantively, undermining its procedural argument." (Id., p. 4.) Next, Petitioner argues that trial counsel was "ineffective for failing to more fully investigate [Petitioner's] defense, particularly with regard to his relationship with [the victim]." (Id., pp. 10 – 12.) Petitioner states that Amy Myers (Petitioner's girlfriend) "gave a statement to police strongly suggesting that [the victim] and Petitioner had known each other." (Id., p. 11.) Next, Petitioner states that Courtney Hill, a bank teller, testified during the omnibus hearing that she did not see signs of coercion between the victim and Petitioner. (Id.) Finally, Petitioner further complains that trial counsel failed to "attempt to track down witnesses who could have further undermined [the victim's] testimony about the January 11 incident." (Id., p. 10.) Petitioner states that during the omnibus hearing, trial counsel admitted there was a police report that indicated that [the victim] went shopping after the alleged kidnapping. (Id.)

After identifying the Strickland standard and the equivalent West Virginia authority as the applicable precedent, the WVSCA found as follows:

> Petitioner argues that defense counsel failed to properly investigate various aspects of the case, including failing to request video surveillance footage from Kroger's the day of the kidnapping, which petitioner argues would have shown the victim, after dropping off petitioner in the store parking lot, proceeded to shop "as if nothing [had] happened." Petitioner also argues that defense counsel should have interviewed other shoppers who were at Kroger's at that time. According to petitioner, this failure to investigate was deficient under an objective standard of reasonableness. We disagree. The evidence at trial revealed that video footage from Kroger's was no longer available by the time the kidnapping was reported to police. As for defense counsel's decision not to seek out other shoppers, counsel testified at the habeas hearing that he could not "imagine that there would have been something notable about [the victim] on that particular date that anybody would have remembered seeing him." Indeed, given that some eight months had passed between the kidnapping and the filing of the police report, we find that it was not

objectively unreasonable for defense counsel to forego this line of investigation. Thus, we concluded that the circuit court did not err in determining that petitioner failed to satisfy the first prong of the *Strickland/Miller* test – that defense counsel's actions were deficient under an objective standard of reasonableness. . . .

Next, petitioner argues that defense counsel was ineffective in his failure to investigate and call witnesses to establish the alleged "relationship" between petitioner and the victim, which petitioner characterizes as a "friendship." In this regard, petitioner contends that defense counsel failed to investigate additional financial loans allegedly made by the victim to petitioner and to call as a trial witness the bank employee who drafted the promissory note previously described herein. At the habeas hearing, the employee testified that she did not feel that the victim was under any duress or other pressure to sign the documents. . . . It is petitioner's argument that, given the testimony of these witnesses at the habeas hearing, this evidence would have cast a reasonable doubt as to the veracity of the victim's trial testimony and the allegation of kidnapping.

We find that defense counsel's decision not to call these witnesses was a matter of trial strategy of which this Court will defer. "What defense to carry to the jury, what witnesses to call, and what method of presentation to use is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." *Miller*, 194 W.Va. at 16, 459 S.E.2d at 127. Indeed, it is difficult to imagine how the testimony of these witnesses would have been relevant to whether petitioner kidnapped the victim as neither was present in the Kroger's parking lot when petitioner entered the victim's vehicle, demanded money, and forced the victim to drive to his home. The victim's testimony at trial established the elements of the crime. Petitioner, the only other person present in the vehicle, elected not to testify. Given these circumstances, we find that defense counsel's decision not to call the bank employee and petitioner's sister as trial witnesses was not "deficient under an objective standard of reasonableness." *Id.* at 6, 459 S.E.2d at 117, at syl. Pt. 5, in part.

(Document No. 20-18, pp. 5 – 6.)

Decisions concerning what defenses and evidence to present are questions of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under <u>Strickland</u>. Trial counsel, however, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." <u>Strickland</u>, 466 U.S. at 691, 104 S.Ct. at 2066. When trial counsel did not make an investigation, his decision "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure

of deference to counsel's judgments." Id. The undersigned finds that there is no evidence that the State court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the WVSCA correctly referenced the Strickland standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, argues that the WVSCA unreasonably applied Strickland to the facts of his case. As stated above, the WVSCA determined that trail counsel's failure to investigate and call witnesses was a matter of trial strategy and not deficient under an objective standard of reasonableness. Considering what arguments or theories supported, or could have supported the WVSCA's decision, undersigned finds that the State court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Concerning trial counsel's alleged failure to investigate or call Amy Myers (Petitioner's girlfriend) as a witness, Petitioner merely argues that she "gave a statement to police strongly suggesting that [the victim] and Petitioner had known each other." Similar to Petitioner's sister, it is likely that the jury would have discredited Ms. Myers' testimony given her relationship with Petitioner. Furthermore, trial counsel relied upon his cross-examination of the victim to establish a relationship between Petitioner and the victim. The victim acknowledged that he cashed checks for Ms. Myers as a "favor." Further, trial counsel elicited testimony from the victim that he cashed checks for Ms. Myers following Petitioner's arrest and the victim was not afraid of Petitioner following the arrest. Trial counsel stressed that such conduct was not consistent with the actions of someone who had no prior relationship or had been kidnapped. Furthermore, there is no indication that the results of Petitioner's trial would have been different had counsel presented Ms. Myers as a witness. Ms.

Myers did not testify at Petitioner's omnibus hearing. Mere testimony that the victim and Petitioner "had known" one another does not prove that Petitioner could not have kidnapped the victim on January 11, 2011. The above statement does not indicate when the parties became acquainted, and even assuming the parties were acquainted prior to January 11, 2011, such does not indicate that the victim was not kidnapped on January 11, 2011. As stated above, the victim testified that on January 11, 2011, Petitioner "grabbed" his arm and he was afraid and felt threatened by the Petitioner. There is no allegation or indicated that Ms. Myers was a witness to the January 11, 2011, incident. Thus, the undersigned finds that Petitioner has failed to demonstrate that he suffered any prejudice.

Concerning Ms. Hill, Petitioner argues that trial counsel was ineffective in failing to investigate or call Ms. Hill as a witness. During the omnibus hearing, Courtney Hill testified that she was employed at United Bank in Charleston, West Virginia, on February 22, 2011. (Document No. 20-23, p. 8.) Ms. Hill testified that the victim and Petitioner came into United Bank on February 22, 2011, and she prepared a promissory note for the parties. (Id., pp. 8 – 11.) Ms. Hill testified that she did not believe the victim was under any duress or coercion on February 22, 2011. (Id., p. 11.) Ms. Hill acknowledged that she could not say what transpired before or after the two men entered or left the bank. (Id., p. 13.) The record clearly reveals that trial counsel thoroughly crossed examined the victim during the criminal trial concerning the promissory note signed by him and Petitioner on February 22, 2011. (Document No. 20-20, pp. 204-06.) The victim testified that Petitioner accompanied him to United Bank on February 22, 2011, because the Petitioner needed more money. (Id., p. 205.) The victim acknowledged that Petitioner signed a promissory note for $4,600.00. (Id., pp. 176-77, 205-06.) The victim explained that $4,600.00 was the total

amount he had given Petitioner at that time and a bank employee (Courtney L. Hill) assisted with the promissory note. (Id., pp. 176-77.) The victim stated that he had the Petitioner sign a promissory note because "I've got to have something to show for it." (Id., p. 177.) Again, trial counsel's strategy was proceeding on the argument that the foregoing was actions of someone who had entered into a financial transaction and not the actions of someone who had been kidnapped. Trial counsel stressed during closing arguments that a kidnapper would not sign a promissory note to repay money that had been improperly taken or provide the victim with a document containing his real name. Furthermore, there is no indication that the results of Petitioner's trial would have been different had counsel presented Ms. Hill as a witness. Ms. Hill's omnibus testimony related solely to what she observed at the bank on February 22, 2011. Ms. Hill acknowledged that she could not testify to what occurred before or after the parties entered the bank. As stated above, the victim testified that on January 11, 2011, Petitioner "grabbed" his arm and he was afraid and felt threatened by the Petitioner. There is no allegation or indication that Ms. Hill was a witness to the alleged kidnapping that occurred on January 11, 2011.[5] Thus, the undersigned finds that Petitioner has failed to demonstrate that he suffered any prejudice.

Concerning other protentional witness, Petitioner complains that trial counsel failed to "attempt to track down witnesses who could have further undermined [the victim's] testimony about the January 11 incident." Petitioner contends that trial counsel should have investigated potential witnesses who may have saw the victim shopping at Kroger following the alleged

---

[5] The record clearly reveals that the Petitioner and the victim used the drive-through window when cashing the check on January 11, 2011. Furthermore, officers testified the surveillance videos from the bank and Kroger were no longer in existences due to the passage of time between the incident and when the victim reported the incident to police.

kidnapping. During the omnibus hearing, trial counsel acknowledged he did not undertake an investigation as to the victim's movements after he was allegedly kidnapped. (Document No. 20-23, p. 32.) Trial counsel noted that in the statement to police, the victim made an oblique statement about going shopping after his alleged kidnapping. (Id.) Although trial counsel noted that the foregoing might have been important, trial counsel explained that he believed such an investigation would have been fruitless because more than eight months passed between the alleged kidnapping and the police report. (Id., pp. 33 and 40.) Trial counsel stated that "I can't imagine that there would have been something notable about [the victim] on that particular date that anybody would have remembered seeing him." (Id., p. 40.) Trial counsel further explained that he was satisfied with the discovery he received in the case and he was able to develop a defense strategy on such. (Id., pp. 49 – 50.) The undersigned finds that the decision of trial counsel to not conduct an investigation concerning the foregoing was objectively reasonable under the totality of the circumstances. Furthermore, Petitioner cannot establish that he was prejudiced by the above conduct. Petitioner fails to identify any individual who witnessed the victim shopping after the alleged kidnapping. See Bassette v. Thompson, 915 F.2d 932, 940-41 (4th Cir. 1990)(petitioner cannot establish ineffective assistance of counsel under *Strickland* on the general claim that additional witnesses should have been called, but instead must proffer evidence of what their testimony would have been). Petitioner merely speculates that such an individual could have been identified and could have provided testimony that would have changed the outcome of his trial. See Johnson v. McCall, 2010 WL 936726, * 4 (D.S.C. Mach 15, 2010)("[M]ere speculation what the witnesses' testimony would have been cannot, by itself, satisfy the applicant's burden of showing prejudice.") Based upon the foregoing, the undersigned cannot find that the State court's

application of <u>Strickland</u> was unreasonable under § 2254(d).

Therefore, the undersigned finds that the State court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's above claim of ineffective assistance of counsel.

### C.    Failure to Object to the Prosecutor's Opening Statement:

In his Petition, Petitioner complains that trial counsel "never objected to hardly anything." (Document No. 1, p. 6.) In his Motion for Summary Judgment, Respondent first argues that Petitioner's Petition is insufficiently pled. (Document No. 22, p. 22.) Next, Respondent argues that even if the Court gives Petitioner latitude based upon his *pro se* status, the record reveals that Petitioner did not receive ineffective assistance of counsel. (<u>Id.</u>, pp. 13 – 14.) Respondent contends Petitioner's claim "that counsel failed to object to various actions by the prosecutor, was decided on independent and adequate state law grounds based upon Petitioner's failure to argue his claim on appeal." (<u>Id.</u>, pp. 14 – 15.)

In Response, counsel first argues that Petitioner's *pro se* Petition is sufficient to set forth his *habeas* claim of ineffective assistance of counsel. (Document No. 33, pp. 4 – 5.) Counsel notes that Petitioner's *pro se* Petition is "clear enough for the State to respond substantively, undermining its procedural argument." (<u>Id.</u>, p. 4.) Next, Petitioner argues that trial counsel was "ineffective for failing to object to the repeated reference to [Petitioner] 'preying' on the elderly in the prosecution's opening statement, implying a pattern of conduct for which no evidence was ever presented." (<u>Id.</u>, pp. 12 – 14.) Petitioner notes that on two occasions during opening

arguments, the prosecutor stated that Petitioner preys on the elderly. (Id.) Petitioner argues that the foregoing constituted prosecutorial misconduct. (Id.) Petitioner complains that "[i]n neither instance did [Petitioner's] trial counsel object to the prosecutor's statements, which implied there was evidence that [Petitioner] had repeatedly targeted elderly people for some kind of crime." (Id., p. 12.) Petitioner argues that trial counsel "was aware that the prosecution had not noticed any evidence to be presented proving such a pattern." (Id., p. 14.) Petitioner contends that "[n]o such evidence was even presented, but the impact of the jury hearing the implication, without objection from defense counsel, suggested there may be." (Id., pp. 12 – 13.)

Regarding Petitioner's above *habeas* claim, the WVSCA determined that this error was previously considered and adjudicated in Petitioner's direct appeal and found to be meritless. The WVSCA stated that "Petitioner's argument in this [habeas] appeal that defense counsel's action in this regard are nonetheless legitimate grounds for an ineffective assistance claim is, at best, an attempt to re-adjudicate these alleged errors through a different lens. Because these alleged errors were previously fully and finally adjudicated, they will not be considered herein." (Document No. 20-18, pp. 7 – 8, fn. 8.) The WVSCA rejected the above claim in Petitioner's direct appeal after finding "no clear error because petitioner was not unduly prejudiced by the State's comments and because no manifest injustice resulted as a result of the comments." (Document No. 20-11, p. 6.)

The undersigned finds that there is no evidence that the State court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. Based upon a review of the record, the undersigned finds that the WVSCA's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." The undersigned finds that the record does not support Petitioner's claim that trial counsel acted ineffectively in failing to object to the prosecution's alleged misconduct of referring to the Petitioner as preying upon the elderly. With respect to claims of prosecutorial misconduct, federal *habeas* review is available only upon a showing that the prosecutor's conduct was improper and that the conduct prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. United States v. Alerre, 430 F.3d 681, 689 (4th Cir. 2005); United States v. Mitchell, 1 F.3d 235, 240 (4th Cir. 1993)(internal citations omitted). The test is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471-72, 91 L.Ed.2d 144 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871-72, 40 L.Ed.2d 431 (1974).). The fact that the comments are "undesirable or even universally condemned" is insufficient to establish a due process violation. Id. In determining whether the prosecutor's comments denied the defendant of a fundamentally fair trial, the Court should consider the following factors: "(1) the nature of the comments, (2) the nature and quantum of the evidence before the jury, (3) the arguments of opposing counsel, (4) the judge's charge, and (5) whether the errors were isolated or repeated." Arnold v. Evatt, 113 F.3d 1352, 1358 (4th Cir. 1997), cert. denied sub nom., Arnold v. Moore, 522 U.S. 1058, 118 S.Ct. 715, 139 L.Ed.2d 655 (1998); see also United States v. Harrison, 716 F.2d 1050, 1052 (4th Cir. 1983), cert. denied sub nom.Wissler v. United States, 466 U.S. 972, 104 S.Ct. 2345, 80 L.Ed.2d 819 (1984). The Court must not review the prosecutor's comments in isolation. Rather, the remarks must be reviewed in context of the entire proceedings to determine whether the comments violated the defendant's right to a fundamentally fair trial. See Mitchell, 1 F.3d at 240; United States v. Young, 470 U.S. 1, 11,

105 S.Ct. 1038, 1044, 84 L.Ed.2d 1 (1985)("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

The undersigned finds no evidence that the prosecutor improperly referred to Petitioner as preying upon the elderly during opening statements. During opening statements, the prosecutor stated, in pertinent part, as follows:

*** 

> But, today you will hear evidence of a con man who preys on the elderly, a con man who intimidates, scares and threatens an elderly 84-year-old man into giving him thousands upon thousands of dollars . . .

***

> Today we will prove that Defendant is guilty of kidnapping, second degree robbery and obtaining by false pretenses. And why? Gary Wayne Mullins, the Defendant, preys on the elderly. He knew who to go after. He knew that our victim would not tell the police. He knew he would not tell even his own son. He knew that he could intimidate and scare an 84-year-old man into giving him almost all the money he had over a three-and-a-half-month period. . . Pure intimidation on the part of a conman who preys on the elderly.

***

(Document No. 20-20, pp. 120-31.) Reviewing the prosecutor's comments in context of the entire proceedings, the undersigned finds that the prosecutor was referring to the 84-year old victim when the prosecutor was referencing Petitioner preying upon "the elderly." Furthermore, the trial court instructed the jury that the purpose of opening statements is for counsel to "tell you what they believe the case from their perspective will show. It is not to be considered evidence, only the testimony you hear and the exhibits that are marked as evidence will be what you will properly consider." (Document No. 20-20, p. 114.) Thus, the undersigned cannot find that the remarks violated the integrity of Petitioner's criminal proceedings or denied Petitioner due process. The

undersigned further notes that the jury was instructed that the comments of the lawyers were not evidence and were not to be considered as matters of fact, and jurors are presumed to follow the court's instructions. (Document No. 20-21, pp. 28 – 29.) Based upon the foregoing, the undersigned finds that counsel's representation did not fall below an objective standard of reasonableness, and there is no reasonable probability that, but for counsel's alleged error, the results of the proceeding would have been different. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted as to Petitioner's above claim of ineffective assistance of counsel.

### D.    Cumulative Effect of Trial Counsel's Ineffectiveness:

In Petitioner's Response, Petitioner finally argues that the cumulative effective of trial counsel's ineffective assistance prejudiced Petitioner. (Document No. 33, p. 14.) Petitioner alleges that trial counsel had "multiple opportunities" to undermine the prosecution's theory of a "stranger abduction" and the victim's testimony that he was kidnapped by Petitioner. (Id.) Petitioner contends that the "cumulative weight of that ineffectiveness resulted in a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" (Id.)

A claim of cumulative ineffective assistance of counsel is not a basis for *habeas* relief. United States v. Hicks, 307 Fed.Appx. 758, 763 (4th Cir. 2009)(finding that matters of alleged ineffective assistances of counsel "that are not unconstitutional individually cannot be added together to create a constitutional violation"); Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1998)(holding that "ineffective assistances of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively"); Dodson v. United States, 2013 WL 4401385,

39

* 8 (N.D.W.Va. Aug. 15, 2013)("A cumulative ineffective assistance of counsel claim is not a basis for habeas relief because matters that are not unconstitutional individually cannot be added together to create a constitutional violation."). The Fourth Circuit has explained that where it is determined that none of counsel's actions amounted to constitutional error, "it would be odd, to say the least, to concluded that those same actions, when considered collectively," denied petitioner effective assistance of counsel. Fisher, 163 F.3d at 853. In the instant case, Petitioner has failed to establish that any of the ineffective assistance of counsel claims individually constituted constitutional error. Accordingly, the undersigned finds that Petitioner's of claim of cumulative ineffective assistance of counsel is without merit.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 21) and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be

granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to send a copy of the same to Petitioner and counsel of record.

Dated: January 2, 2019.

Omar J. Aboulhosn
United States Magistrate Judge

41